1
2
3
4
5
6
7
8

IN THE UNITED STATES DISTRICT COURT

9

FOR THE EASTERN DISTRICT OF CALIFORNIA

10

HERBERT MATHIS,

11

           Plaintiff,                   No. CIV S-10-1789 CMK (TEMP)

12

    vs.

13

COMMISSIONER OF SOCIAL
SECURITY,

14

           Defendant.              MEMORANDUM OPINION AND ORDER

15

_____/

16
17
18
19
20
21
22
23
24

          Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pursuant to the written consent of all parties, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment.  See 28 U.S.C. § 636(c).  Pending before the court are plaintiff's motion for summary judgment (Doc. 12) and defendant's cross-motion for summary judgment (Doc. 17).  For the reasons discussed below, the court will grant plaintiff's motion for summary judgment or remand and deny the Commissioner's cross-motion for summary judgment.

25
26

# I.  PROCEDURAL HISTORY[1]

Plaintiff applied for social security benefits on July 14, 2004 alleging an onset of disability on August 13, 2002 due to physical and mental impairments. (Certified administrative record ("CAR") 87-91, 130, 209-210 .)  Specifically, plaintiff claims disability due to post traumatic stress disorder ("PTSD").[2]  Plaintiff's claim was denied initially and upon reconsideration.  Plaintiff requested an administrative hearing, which was held on December 13, 2007, before Administrative Law Judge ("ALJ") Mark C. Ramsey.  In a September 18, 2008 decision, the ALJ concluded that plaintiff is not disabled[3] based on the following findings:

---

[1]  Because the parties are familiar with the factual background of this case, including plaintiff's medical history, the undersigned does not exhaustively relate those facts here.  The facts related to plaintiff's impairments and medical history will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

[2]  Plaintiff also alleged disability due to a visual impairment, which the ALJ found to be nonsevere.  That finding is not challenged here.

[3]  Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income ("SSI") is paid to disabled persons with low income.  42 U.S.C. § 1382 et seq.  Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  See 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

1.   The claimant met the insured status requirements of the Social Security Act though December 31, 2008.

2.   The claimant has not engaged in substantial gainful activity since September 1, 2003, his amended alleged onset date of disability.

3.   The claimant has the following severe impairment:  Post-Traumatic Stress Disorder (PTSD) with a history of substance abuse.

4.   The claimant does not have a mental impairment or combination of mental impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.   After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations:  Mentally, he is limited to simple unskilled work without frequent contact with co-workers or the public.

6.   The claimant is unable to perform any of his past relevant work.

7.   The claimant was born on July 1, 1949 and was 53 years old, which is defined as an individual closely approaching advanced age, on September 1, 2003.

8.   The claimant has at least a high school education and is able to communicate in English.

9.   Transferability of job skills is not an issue in this case because the claimant's residual functional capacity limits him to simple, unskilled work.

10.   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11.   The claimant has not been under a disability, as defined in the Social Security Act, from September 1, 2003 through the date of this decision.

CAR 21-29.  After the Appeals Council declined review on May 12, 2010, this appeal followed.

---

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

## II.  STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is more than a mere scintilla, but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996).  It is "such evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence.  See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).  Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

## III.  DISCUSSION

Plaintiff argues the ALJ erred by improperly discounting and ignoring record medical opinions and improperly relying on the Grids to find plaintiff not disabled.

### A.     MEDICAL OPINIONS

Plaintiff contends the ALJ improperly rejected the opinions of Dr. Will, an internist who performed a neuropsychiatric exam, and Dr. Kalman, an independent examining psychiatrist.  Plaintiff further contends the ALJ improperly failed to address the opinions of

1    treating psychologist Dr. SanFilippo and consultative psychiatrist, Dr. Surulinathan.  The weight

2    given to medical opinions depends in part on whether they are proffered by treating, examining,

3    or non-examining professionals.  See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995).

4    Ordinarily, more weight is given to the opinion of a treating professional, who has a greater

5    opportunity to know and observe the patient as an individual, than the opinion of a non-treating

6    professional.  See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen,

7    853 F.2d 643, 647 (9th Cir. 1987).  The least weight is given to the opinion of a non-examining

8    professional.  See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

9            In addition to considering its source, to evaluate whether the Commissioner

10   properly rejected a medical opinion the court considers whether:  (1) contradictory opinions are

11   in the record; and (2) clinical findings support the opinions.  The Commissioner may reject an

12   uncontradicted opinion of a treating or examining medical professional only for "clear and

13   convincing" reasons supported by substantial evidence in the record.  See Lester, 81 F.3d at 831.

14   While a treating professional's opinion generally is accorded superior weight, if it is contradicted

15   by an examining professional's opinion which is supported by different independent clinical

16   findings, the Commissioner may resolve the conflict.  See Andrews v. Shalala, 53 F.3d 1035,

17   1041 (9th Cir. 1995).  A contradicted opinion of a treating or examining professional may be

18   rejected only for "specific and legitimate" reasons supported by substantial evidence.  See Lester,

19   81 F.3d at 830.  This test is met if the Commissioner sets out a detailed and thorough summary of

20   the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a

21   finding.  See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989).  Absent specific and

22   legitimate reasons, the Commissioner must defer to the opinion of a treating or examining

23   professional.  See Lester, 81 F.3d at 830-31.  The opinion of a non-examining professional,

24   without other evidence, is insufficient to reject the opinion of a treating or examining

25   professional.  See id. at 831.  In any event, the Commissioner need not give weight to any

26   conclusory opinion supported by minimal clinical findings.  See Meanel v. Apfel, 172 F.3d 1111,

1    1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion);

2    see also Magallanes, 881 F.2d at 751.

3            Dr. Will examined plaintiff on August 31, 2005, provided a narrative report, and

4    completed a mental residual functional capacity questionnaire.  CAR 380-383, 437-439.  Dr.

5    Will's diagnoses included sociopathic personality disorder, with violent episodes, depression,

6    and post-traumatic stress disorder.  CAR 438.  With respect to plaintiff's ability to adjust to a

7    job, Dr. Will assessed plaintiff as being "poor/none" in all categories.  CAR 383.  The ALJ

8    rejected Dr. Will's opinion on the sole basis that "the objective medical evidence does not

9    support . . . [the] extreme restriction of [plaintiff's] ability to function."  CAR 28.  The reason set

10   forth by the ALJ for rejecting Dr. Will's opinion does not meet the standards set forth above.

11           Although the body of the ALJ's discussion sets forth an extensive discussion as to

12   why the ALJ found plaintiff not credible with respect to his claims of having post traumatic

13   stress disorder as a result of service in Vietnam, and Dr. Will's assessment was based in part on

14   plaintiff's self-reported mental impairment history, the record is replete with the objective

15   examinations of other mental health practitioners which support, rather than undermine, Dr.

16   Will's opinion.  For instance, Dr. Surulinathan, who examined plaintiff in August 2004, prior to

17   Dr. Will's assessment, noted a dysphoric mood, ability to recall only one of three objects after

18   five minutes despite prompting, inability to spell "world" backwards, and inability to articulate

19   differences and similarities.  CAR 546.  Dr. Surulinathan opined plaintiff might not be able to

20   perform work activities on a consistent basis and might not be able to maintain regular

21   attendance.  CAR 547.  Physicians who examined plaintiff after Dr. Will's assessment also made

22   significant objective findings of impaired mental functional capacity.  Dr. SanFilippo,[4] a treating

23

24           [4]  The ALJ did not address either Dr. Surulinathan's or Dr. Sanfilippo's reports.  CAR 23-
     24, 28.  While Dr. SanFilippo's report did not opine as to plaintiff's mental residual functional
25   capacity and it was not error to fail to specifically address this opinion in the ALJ's decision,
     given the consistency of the mental status examinations by these specialists in the field of
26   psychiatry, and the dates of the examinations (both before and after Dr. Will's assessment), it

1   clinical psychologist, on mental examination of plaintiff in August 2007 reported plaintiff as

2   being angry and depressed, hypervigilant, with unpredictable anger, and concluded plaintiff had

3   the signs and symptoms consistent with major depressive disorder.  CAR 317-318.  In November

4   2007, examining psychiatrist Dr. Kalman performed a mental status examination; objective

5   findings included impaired memory with inability to recall any of three objects at five minutes,

6   inability to do serial 3's, esoteric interpretation of a proverb, lack of basic information regarding

7   the preceding five United States presidents; depressed mood; restricted affect and delusions of a

8   persecutor type.  AT 310-311.  Dr. Kalman also cited clinical findings of poor memory, mood

9   disturbance, anhedonia, psychomotor agitation or retardation, social withdrawal, and hostility and

10  irritability in support of his Axis I diagnosis of post traumatic stress disorder and Axis II

11  diagnosis of rule/out antisocial personality.  CAR 301-302.  Treating psychologist Dr. Ardalan

12  also performed a mental status examination in April 2008 and in addition to PTSD, diagnosed

13  antisocial personality disorder.  CAR 565.  In light of these multiple objective findings in the

14  medical record, the ALJ's rejection of Dr. Will's opinion on the sole basis that it was

15  unsupported by objective medical evidence cannot be sustained.

16          Plaintiff also challenges the rejection by the ALJ of Dr. Kalman's opinion.  After

17  performing a mental status exam and reviewing plaintiff's medical records, Dr. Kalman opined

18  that plaintiff was incapable of even low stress work, would likely be absent more than three times

19  a month, and was markedly limited in the ability to accept instructions and criticism from

20  supervisors.  CAR 302-311.  The ALJ accorded minimal weight to Dr. Kalman's opinion

21  because the record lacked evidence that plaintiff served as a "tunnel rat" in Viet Nam and

22  therefore the plaintiff's claim of suffering from PTSD was not credible.  While rejection of a

23  doctor's opinion based on properly discredited subjective symptoms can be a specific and

24  legitimate reason, in this case, Dr. Kalman's assessment of plaintiff's mental residual functional

25

26  appears the ALJ failed to consider the entirety of the record.  On remand, the ALJ should
    specifically discuss the limitations assessed by Dr. Surulinathan.

7

1  capacity was not predicated solely on plaintiff's self reported symptoms of PTSD, but also based

2  on his review of the medical records and his own clinical findings on mental status exam.  CAR

3  309.  Moreover, while the ALJ correctly noted that Dr. Kalman assessed plaintiff's ability to

4  carry out one or two-step instructions was only mildly limited, the ALJ failed to discuss, or even

5  acknowledge the other significant limitations assessed by Dr. Kalman, which would appear to

6  preclude any work activity.  CAR 28, 305-308.  The matter will therefore be remanded for further

7  evaluation of the medical evidence.

8          **B.  GRIDS**

9          Finally, plaintiff contends the ALJ improperly relied on the grids and should have

10  obtained the testimony of a vocational expert.  The Medical-Vocational The Medical-Vocational

11  Guidelines ("the grids") are in table form.  The tables present various combinations of factors the

12  ALJ must consider in determining whether other work is available.  See generally Desrosiers,

13  846 F.2d at 577-78 (Pregerson, J., concurring). The factors include residual functional capacity,

14  age, education, and work experience.  For each combination, the grids direct a finding of either

15  "disabled" or "not disabled."

16          There are limits on using the grids, an administrative tool to resolve individual

17  claims that fall into standardized patterns:  "[T]he ALJ may apply [the grids] in lieu of taking the

18  testimony of a vocational expert only when the grids accurately and completely describe the

19  claimant's abilities and limitations."  Jones v. Heckler, 760 F.2d 993, 998 (9th Cir. 1985); see

20  also Heckler v. Campbell, 461 U.S. 458, 462 n.5, 103 S. Ct. 1952, 1955 n.5 (1983).  The ALJ

21  may rely on the grids, however, even when a claimant has combined exertional and nonexertional

22  limitations, if nonexertional limitations are not so significant as to impact the claimant's

23  exertional capabilities.[5]  Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990), overruled on

24  _____

25      [5]  Exertional capabilities are the "primary strength activities" of sitting, standing, walking,
    lifting, carrying, pushing, or pulling.  20 C.F.R. § 416.969a (b) (2003); SSR 83-10, Glossary;
26  compare Cooper v. Sullivan, 880 F.2d 1152, 1155 n. 6 (9th Cir.1989).

1   other grounds, Bunnell v. Sullivan, 947 F.2d 341 (9th Cir. 1991) (en banc); Polny v. Bowen, 864

2   F.2d 661, 663-64 (9th Cir. 1988); see also Odle v. Heckler, 707 F.2d 439 (9th Cir. 1983)

3   (requiring significant limitation on exertional capabilities in order to depart from the grids).

4           In assigning error to the ALJ's failure to consult a vocational expert, plaintiff

5   notes that plaintiff's impairments are exclusively nonexertional in nature.  In opposition,

6   defendant argues that the ALJ properly found that the occupational base was not significantly

7   eroded by plaintiff's nonexertional impairments because plaintiff could perform unskilled work

8   at all exertional levels.  In making this finding, however, the ALJ ignored significant

9   nonexertional limitations which were assessed by medical practitioners, and which, as discussed

10  above, were not properly considered by the ALJ.  See, e.g. CAR 383 (Dr. Will assessed plaintiff

11  as having "poor/none" ability to adjust to a job in all categories); CAR 305-308 (Dr. Kalman

12  assessed plaintiff as incapable of even "low stress" work and markedly limited in ability to

13  accept instructions and criticism from supervisors; on average plaintiff estimated to be likely

14  absent from work more than three times a month).  On remand, the ALJ must either properly

15  discount the nonexertional impairments assessed by all of the treating and examining physicians,

16  or obtain the testimony of a vocational expert and include in the hypotheticals the limitations

17  assessed which are not properly rejected.

18                          **IV.  CONCLUSION**

19          For the foregoing reasons, this matter will be remanded under sentence four of 42

20  U.S.C. § 405(g) for further development of the record and further findings addressing the

21  deficiencies noted above.

22  _____

23          Non-exertional activities include mental, sensory, postural, manipulative and
    environmental matters that do not directly affect the primary strength activities. 20 C.F.R. §
24  416.969a (c) (2003); SSR 83-10, Glossary; Cooper, 880 F.2d at 1155 & n. 7 (citing 20 C.F.R. pt.
    404, subpt. P, app. 2, § 200.00(e)).  "If a claimant has an impairment that limits his or her ability
25  to work without directly affecting his or her strength, the claimant is said to have nonexertional
    (not strength-related) limitations that are not covered by the grids." Penny v. Sullivan, 2 F.3d
26  953, 958 (9th Cir. 1993) (citing 20 C.F.R., pt. 404, subpt. P, app. 2 § 200.00(d), (e)).

1          Accordingly, IT IS HEREBY ORDERED that:

2          1.  Plaintiff's motion for summary judgment (Doc. 12) is granted;

3          2.  Defendant's cross-motion for summary judgment (Doc. 17) is denied;

4          3.  This matter is remanded for further proceedings consistent with this order; and

5          4.  The Clerk of the Court is directed to enter judgment and close this file.

6

7     DATED:  August 23, 2011

8

9                                          **CRAIG M. KELLISON**
                                           UNITED STATES MAGISTRATE JUDGE

10

11   JMM
12   mathis.ss.cmk

13

14

15

16

17

18

19

20

21

22

23

24

25

26